UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**STEVIE BURNEY**  **CASE NO.  3:23-CV-01779**

**VERSUS**  **JUDGE TERRY A. DOUGHTY**

**MADISON PARISH HOSPITAL SERVICE**  **MAG. JUDGE KAYLA D. MCCLUSKY**
**DISTRICT, ET AL.**

## SUPERSEDING REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Madison Parish Hospital Service District, Dr. Donald Perry, and Felicia Williams.  [doc. #8].  The motion is opposed by Plaintiff.  [doc. #16].  This Court issued a Report and Recommendation on July 29, 2024, recommending that the Motion to Dismiss be granted in part, denied in part, and that the case be dismissed without prejudice.  [doc. #21].  Upon further review, the Court finds it appropriate to VACATE the original Report and Recommendation and issue this Superseding Report and Recommendation in its place.

For reasons assigned below, IT IS RECOMMENDED that the motion be GRANTED IN PART and DENIED IN PART.

## Background

Plaintiff Stevie Burney ("Burney") filed the instant action on December 20, 2023.  [doc. #1].  In her Complaint, Burney names the Madison Parish Hospital Service District ("MPHSD"), Dr. Donald Perry ("Perry"); Felicia Williams ("Williams") (collectively "Defendants"); and RSUI

1

Indemnity Company ("RSUI")[1] as Defendants.  (First Amended Complaint [doc. #26, pp. 4-5]).[2] Perry is sued both in his individual capacity and in his official capacity as CEO of MPHSD.  *Id.* at p. 4. Williams is sued in both her individual capacity and her official capacity as Chief Legal Counsel of MPHSD.  *Id.*  Burney seeks damages arising from alleged retaliation associated with reports she made about the misconduct of an MPHSD employee.  *Id.* at pp. 10-13.

Burney began working as a nurse practitioner ("NP") at MPHSD in 2018.  *Id.* at p. 5.  On "several" unspecified dates, Burney "disclosed to various managerial employees" of MPHSD that a fellow NP employed at MPHSD, Lataya Tacha Freeman-Ross ("Freeman-Ross"), had been committing Medicare and Medicaid fraud, medical records fraud, and theft of public funds.  *Id.* at p. 6.  On or about August 8, 2022, Freeman-Ross was terminated for premature signing of medical charts.  *Id.* at p. 7.  Freeman-Ross was then reinstated on October 14, 2022.  *Id.*  This occurred after two new members of the MPHSD board were appointed by the Madison Parish Police Jury.[3] *Id.*  "Soon thereafter" on an unspecified date or dates, Freeman-Ross was paid $30,000.00 by MPHSD to cover the legal fees owed to her attorney, Williams.  *Id.*  On another unspecified date or dates thereafter, Williams was hired as Chief Legal Counsel of MPHSD, and Perry was hired as CEO of MPHSD.  *Id*

---

[1] RSUI is not implicated in any of the alleged conduct and appears to be joined solely in its capacity as Defendants' insurer.  *See* [doc. #26, p. 10] (RSUI "issued one or more policies of liability insurance to Defendant(s) which cover[] the damages suffered by [Burney].").

[2] The facts, at the pleading stage, are drawn from the operative pleading, which, in this case, is the First Amended Complaint.  An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).  Here, there is no indication that the amended complaint adopted or referenced the earlier pleading.

[3] *See infra* for a discussion of the Madison Parish Police Jury's authority over MPHSD.

On October 29, 2022, Burney submitted letters describing Freeman-Ross' alleged misconduct to the Medicaid Fraud Unit of the Louisiana Department of Health and the Legislative Auditor's Office. *Id.* at p. 6. On November 4, 2022, Burney submitted similar letters to the Office of Inspector General of the U.S. Department of Health and Human Services ("OIG") and to the Louisiana Board of Nursing. *Id.* Burney had "several conversations with governmental agencies," although the only one pleaded with specificity is an in-person meeting with Steven Cooper of OIG on December 2, 2022. *Id.* Throughout this time, unnamed managers and supervisors of MPHSD were aware that Burney had made reports to various governmental authorities. *Id.*

On or about December 20, 2022, Burney notified "several management-level employees" of MPHSD, including Perry, that she had been subjected to illegal harassment and retaliation for her disclosure to governmental authorities of Freeman-Ross' conduct. *Id.* at p. 7. On January 7 and 8, 2023, Burney sent letters to OIG and "the Attorney General's office" regarding the alleged retaliation. *Id.* "Immediately following" Burney's communications with governmental authorities, she experienced the following "series of harassing and retaliatory acts" on unspecified dates:

- Attempts to "force" her to reimburse MPHSD for previous work-related attorney's fees that had been paid by MPHSD pursuant to her employment contract. *Id.* at p. 8.

- Denial of pay for hours worked at home "which had been authorized" and previously done "on a routine basis," despite other employees receiving pay for similar work. *Id.*

- Requiring a doctor's excuse for four hours of paid time off despite "the employment policy" only requiring a written excuse for absences exceeding 48 hours. *Id.*

- Failure to respond to her "requests for personnel information" about her pay and hours. *Id.*

- Requiring her to take a COVID test at the MPHSD lab, even though she had "proof of two positive home tests" and "no employment policy required a lab result." *Id.*

- Undergoing "several reports" by the Clinic Assistant Director Stacey Sandige ("Sandige") "in an effort to find a reason to terminate her." *Id.* at p. 9.[4]

On or about January 10, 2023, Burney was provided MPHSD's drug testing policy ("the Drug Policy") and a related consent form. *Id.* at p. 9. The Drug Policy had not been authorized by MPHSD's board and was not in the employee policy and procedure manual. *Id.* "After researching state law," Burney submitted a signed consent form on January 11, 2023. *Id.* The signed form included an objection to the liability release included in the Drug Policy on the grounds that it was not in compliance with state law. *Id.* "Defendant Hospital" threatened to terminate Burney if she did not sign the consent form. *Id.* Burney requested time to consult her attorney, to which Perry consented. *Id.*

On January 12, 2023, Burney was told by co-workers that she was no longer employed. *Id.* Burney was unable to contact Perry or "other managers." *Id.* Two days later, on January 14, 2023, Burney received a certified letter indicating she had been terminated for failing to sign the Drug Policy consent form and not clocking out on January 11, 2023. *Id.* "Several employees" who had not yet signed the consent form or failed to clock out were not terminated. *Id.* at p. 10.

On December 20, 2023, Burney initiated this action by filing her Complaint. [doc. #1]. Defendants responded by filing a Motion to Dismiss on March 26, 2024. [doc. #8]. Burney timely opposed the motion on May 7, 2024. [doc. #16]. Subsequently, this Court issued a Report and Recommendation on July 29, 2024, recommending that the Motion to Dismiss be granted in part,

---

[4] "Soon thereafter" on an unspecified date, Sandige "quit due to [a] hostile work environment." *Id.*

denied in part, and that the case be dismissed without prejudice. [doc. #21]. However, the undersigned also noted that Plaintiff could seek leave to amend her Complaint.

On August 9, 2024, Burney filed objections to the Report and Recommendation. [doc. #22]. That same day, Burney also submitted a Motion for Leave of Court to File an Amended Complaint. [doc. #23]. Defendants responded to the objections on August 26, 2024, [doc. #24], but did not oppose the Motion for Leave of Court to File an Amended Complaint within the fourteen days. As a result, this Court granted the Motion for Leave of Court to File an Amended Complaint on September 5, 2024, and noted its intent to issue a supplemental Report and Recommendation addressing the newly raised claims.

Upon reviewing the First Amended Complaint, along with the associated briefs and relevant filings, the Court finds that the original Report and Recommendation should be VACATED. In its place, this Report and Recommendation is issued to address the newly raised claims and provide a more comprehensive analysis of the matter.

Briefing is complete. Accordingly, the matter is ripe.

## Analysis

### I.    Legal Standard

#### (a) Federal Rule of Civil Procedure 12(b)(1)

The Federal Rules of Civil Procedure sanction dismissal where the presiding court lacks subject-matter jurisdiction.[5] FED. R. CIV. P. 12(b)(1). As a Rule 12(b)(1) motion concerns the trial court's jurisdiction, the court is free to weigh relevant evidence and satisfy itself that it has the power to hear the case. *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (quoting *Mortensen v.*

---

[5] The federal courts have limited jurisdiction and cannot adjudicate claims absent a statutory conferral of jurisdiction. *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).

*First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).  Consequently, jurisdiction may be found lacking based upon (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Id.*  (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  A Rule 12(b)(1) motion should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief.  *In re FEMA Trailer Formaldehyde*, 668 F.3d at 287.  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the jurisdictional attack should be resolved first.  *Ramming*, 281 F.3d at 161.

### (b) Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To withstand such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly*, 550 U.S. at 556.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010), but "[t]hreadbare recitals" of those elements "supported by mere conclusory statements" are insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Factual pleadings that are "merely consistent with" a defendant's liability "stop[] short of the line between possibility and plausibility."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff, *In*

*re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), although courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## II.    The Amended Complaint

In her First Amended Complaint, Burney seeks to meet the pleading requirements by amending three key paragraphs.  These amendments aim to provide additional specificity regarding her allegations of retaliation and wrongful termination.

First, Paragraph 12 was amended to add temporal details and a claim that the actions were retaliatory, allegedly in response to Burney's protected activities involving the reporting of unlawful conduct.  The paragraph now asserts, in relevant part:

> Immediately following her protected activity **which began in October 2022**, Complainant was retaliated against in several ways. **These actions were taken by Defendants because Complainant reported, complained about, opposed, and refused to participate in unlawful conduct by Defendants and their agents and disclosed such conduct to governmental authorities and participated in investigations regarding same.** Defendants engaged in a series of harassing and retaliatory acts, including but not limited to:
>
> A. Trying to force Complainant to reimburse Defendant Hospital for previous work-related attorney's fees in the amount of $15,000 that had been paid by Defendant Hospital pursuant to her employment contract, **on or about November 17, 2022**;
> B. Denying her pay for hours worked at home which had been authorized and done by Complainant on a routine basis to complete her charts (while allowing other employees to continue working from home when needed), **on or about November 27-30, 2022**;
> C. Requiring her to get a doctor's excuse for four hours of Paid Time Off when the employment policy only required a written excuse if the absence exceeded 48 hours, **on or about December 6-9, 13, 2022**;
> D. Repeatedly ignoring her requests for personnel information about her pay and hours, **on or about December 27, 2022**;
> E. Harassing her when she had Covid, stating she needed to go to the Hospital lab and get a positive test confirmation even though she had proof of two positive home tests and when no employment policy required a lab result, **on or about December 27, 2022**;

F.  Directing the Clinic Assistant Director Stacey Sandige to run several reports on Complainant in an effort to find a reason to terminate her. Soon thereafter, Ms. Sandige quit due to hostile work environment, **on or about January 5, 2023**;

(First Amended Complaint [doc. #26, pp. 1-2]).[6]

Next, Paragraph 13 was amended to expand on the termination allegations, alleging that Burney's dismissal was the culmination of Defendants' retaliatory conduct. The paragraph now reads:

The pattern of harassing and retaliatory actions by Defendants culminated with Complainant's termination on January 12, 2023. On or about January 10, 2023, Complainant was provided Defendant Hospital's drug testing policy disclosure and consent form. This policy was not authorized by the Hospital Board nor was it in the employee policy and procedure manual. The consent form stated that Complainant could not hold Defendant Hospital or the third-party lab liable for disclosure of test results. After researching state law, on January 11, 2023, Complainant submitted to Defendant Hospital a signed form with an objection to the portion of the consent regarding the liability release because it was not in compliance with state law. Defendant Hospital threatened to terminate Complainant if she did not sign the consent form. Complainant asked for additional time to consult her attorney, and Defendant Perry consented. However, on January 12, 2023, Complainant was made aware by other employees that she was no longer employed, and her attempts to contact Defendant Perry and other managers went unanswered. On January 14, 2023, she received a certified letter **signed by Defendant Perry** stating she had been terminated. **Defendant Hospital's management-level employees, including Defendant Perry and Defendant Williams, made and participated in the decision to terminate Complainant's employment.** The alleged reasons were for not signing the consent form and not clocking out on January 11, 2023, her last day of employment. **This was a pretext for the real reason Defendants terminated Complainant which was because Plaintiff complained about, opposed, and refused to participate in unlawful conduct by Defendants and their agents and disclosed such conduct to governmental authorities and participated in investigations regarding same.** Several employees who had not yet signed the consent form were not terminated. Moreover, several employees have failed to clock out and were not terminated. Before her termination, Complainant had received positive performance evaluations and patient reviews. She never received a write-up and always received the 4% maximum annual raise.

---

[6] All portions of the Amended Complaint in bold represent new or modified language from the original Complaint, as noted in Plaintiff's filing.

*Id.* at pp. 2-3.

Finally, Paragraph 20 was amended to add subsection "(E)" to the reference of Louisiana Revised Statute § 46:439.1, clarifying the specific statutory provision at issue. The amended paragraph provides:

> By retaliating against Complainant because she in good faith complained about, opposed, and refused to participate in unlawful conduct by Defendants and their agents and disclosed such conduct to governmental authorities and participated in investigations regarding same, Defendants violated the False Claims Act anti-retaliation provisions, 31 U.S.C. §3730(h), and the corresponding Louisiana provisions, La. R.S. § 46:439.1**(E)**; and Louisiana anti-reprisal law, La. R.S. 23:967.

*Id.* at p. 4.

### III.    Eleventh Amendment Sovereign Immunity

Defendants' first argument for dismissal is that MPHSD as well as Perry and Williams – in their official capacities – are entitled to Eleventh Amendment sovereign immunity.  [doc. #8-1, pp. 4-6].

The Eleventh Amendment prohibits individuals from suing a state in federal court "unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."  *Pequeño v. Univ. of Texas at Brownsville*, 718 F. App'x 237, 241 (5th Cir. 2018) (quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002)); *see also* U.S. CONST. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign State.").  This immunity covers "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."  *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997).  "Among state entities, there is a distinction between 'arm[s] of the state' and those

entities 'possess[ing] an identity sufficiently distinct from that of the State of Louisiana to place it beyond [the Eleventh Amendment's] shield.'" *Bonin v. Sabine River Auth.*, 65 F.4th 249, 254 (5th Cir. 2023) (quoting *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 131 (5th Cir. 1986)). This distinction turns on whether the defendant entity is "an arm of the state partaking in the privileges of Eleventh Amendment immunity" or "actually part of a political subdivision unprotected by the Eleventh Amendment." *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999). Whether a defendant entity is an arm of the state is a question of federal law, although there is no bright-line test for making this determination. *Bonin*, 65 F.4th at 254 (citing *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 690 n. 4 (5th Cir. 2002)). Courts must make a "reasoned judgment" as to whether the suit is "effectively against the sovereign state," *Earles v. State Bd. of Certified Pub. Accts. of La.*, 139 F.3d 1033, 1037 (5th Cir. 1998), which is to say whether the defendant entity is an arm of the state or a political subdivision. In *Clark v. Tarrant County, Texas.*, 798 F.2d 736 (5th Cir. 1986), the Fifth Circuit enunciated six factors to make this determination: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the entity's funding source; (3) the degree of local autonomy exercised by the entity; (4) whether the entity is concerned with local or statewide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Vogt*, 294 F.3d at 689. A defendant entity "need not possess each of the above attributes" to be entitled to Eleventh Amendment immunity, *Hudson*, 174 F.3d at 681-82, although "the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147-48 (5th Cir. 1991) (quoting *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir. 1987)).

*Characterization of MPHSD* – State law empowers the Madison Parish Police Jury to create hospital service districts such as MPHSD.  *See* LA. REV. STAT. § 46:1051(a) (authorizing parish police juries "to form and create" hospital service districts).  Hospital service districts created pursuant to Louisiana law are political subdivisions of the state.  *Id.* at § 46:1064(A).  This Court has previously held that the Madison Parish Policy Jury is a political subdivision not protected by Eleventh Amendment immunity.  *See American Tel. & Tel. Co. v. Madison Parish Police Jury*, 465 F. Supp 168, 170 (W.D. La. Dec. 8, 1977) ("[T]he award herein can operate only against the Madison Parish Policy Jury.").  Furthermore, the parties both describe MPHSD as a political subdivision.  *See* [doc. #8-1, p. 2] ("Madison Parish Hospital is a political subdivision . . . "); [doc. #16, p. 7] ("Defendant Hospital is a political subdivision . . . .").  Consequently, the first *Clark* factor counsels against finding sovereign immunity.[7]

*Funding of MPHSD* – As the Eleventh Amendment is concerned, in part, with protecting state treasuries, this factor is meant to determine the state's potential liability should a judgment be entered against the defendant entity.  *See Bonin*, 65 F.4th at 256 (In analyzing this factor, courts assess "the state's liability in the event there is a judgment against the defendant, and . . . the state's liability for the defendant's general debts and obligations.").  Under the Louisiana Constitution, "[n]o judgment against the state, a state agency, or a political subdivision shall be [paid] except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered."  LA. CONST. art. XII, § 10(C); *see also* LA. REV. STAT. § 13:5109(B)(2) (codifying similar language).  This means that "the legislature pays judgments against a state agency, while a political subdivision pays judgments against itself."  *Bonin*, 65 F.4th at 256 (citing

---

[7] While this factor is essentially dispositive in the instant case, the undersigned conducts the full *Clark* analysis out of an abundance of caution.

*Newman Marchive P'Ship, Inc. v. City of Shreveport*, 979 So. 2d 1262, 1266 (La. 2008)). As discussed *supra*, MPHSD is a political subdivision. Consequently, MPHSD must pay for judgments against it, and this factor weighs against finding sovereign immunity.

*Autonomy Exercised by MPHSD* – The third factor considers the extent of the defendant entity's independent management authority and the independence of individual commissioners. *Vogt*, 294 F.3d at 694. MPHSD is governed by a board of commissioners. *See* LA. REV. STAT. § 46:1053(A). This commission has the power to, *inter alia*, make rules governing its hospitals, oversee and regulate officers and employees of those hospitals, establish rates of pay for the use of facilities, and enter into lease agreements. *Id.* at § 46:1055(A). The commission may also enter contracts concerning the management, operation, and administration of its hospitals. *Id.* at § 46:1055(B). Commissioners are appointed by the Madison Parish Police Jury and may only be removed upon a showing of just cause by the Parish governing authority. *See id.* at §§ 46:1053(A), (M)(3)(c). MPHSD's considerable degree of local autonomy does not support a finding of Eleventh Amendment immunity.

*MPHSD's Concern with Local or Statewide Problems* – Louisiana law limits the creation of hospital service districts to "within the respective parishes" of the authorizing police jury. *Id.* at § 46:1051(A). Hospital service districts are to "promote the general health of the community" and cooperate with institutions engaged in providing health services "to residents of the district." *Id.* at § 46:1052(4)-(5). In short, MPHSD is entirely local in its focus. Therefore, the fourth *Clark* factor counsels against finding sovereign immunity.

*MPHSD's Authority to Sue and Be Sued, and to Hold and Use Property* – Hospital service districts have the power "to sue and be sued," expropriate property "for the purpose of acquiring land for any purpose that [they] may find necessary," and acquire "any and all necessary equipment

and buildings for the purpose of performing the objects for which [they are] formed." *Id.* at §

46:1060. The final *Clark* factors thus weigh against finding Eleventh Amendment immunity. In

sum, all six *Clark* factors weigh against a finding that MPHSD is entitled to Eleventh Amendment

immunity.

Accordingly, it is RECOMMENDED that the motion be DENIED to the extent it seeks

Eleventh Amendment immunity for MPHSD and for Perry and Williams in their official capacities.

## IV.    Official Capacity Claims

Williams and Perry argue that the official capacity claims against them "are considered to

be against the office" (i.e., MPHSD), which is not a "person" as required by § 1983, and, therefore,

the claims should be dismissed. [doc. #8-1, p. 6]. As discussed *infra*, Defendants incorrectly argue

that MPHSD is not a person and thus not subject to liability under § 1983. However, Defendants

correctly contend that the official capacity claims against Perry and Williams are, in fact, properly

construed as claims against MPHSD.

In actions where a defendant-official is sued in both his individual and official capacities

and a municipality is also sued, "there potentially exists an overlapping cause of action" whereby

"[t]he official-capacity claims and the claims against the governmental entity essentially merge."

*Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). An official-

capacity suit is generally "another way of pleading an action against an entity of which an officer

is an agent." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Monell v. Dep't

of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). Therefore, an official-capacity

suit is treated as a suit against the real party of interest—the government entity— not against the

official personally. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Jones v. City of

Houston*, 756 F. App'x 341, 346 n.2 (5th Cir. 2018) ("We treat suits against municipal officials in

their official capacities as suits against the municipality itself."). Claims of this nature should be treated as against the government entity "[a]s long as [the entity] receives notice and an opportunity to respond." *Graham*, 473 U.S. at 166.[8]

Here, Perry and Williams are sued in their official capacity as MPHSD employees. Any claims against them in that capacity merely represent another way to plead a claim against MPHSD. MPHSD is also a defendant in the instant case, meaning it has received notice of the claims and had an opportunity to respond. It is thus appropriate to dismiss the official capacity claims against Perry and Williams.

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of the official-capacity claims against Perry and Williams.

## V.    Section 1983 Claims

Burney's first claim arises under 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments. [doc. #1, pp. 7-8]. The undersigned first establishes general § 1983 principles before analyzing Burney's *Monell* claims and then turning to her Fourteenth and First Amendment claims.

### a.  Section 1983 Liability Generally

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." 42 U.S.C. § 1983. The statute does not create any substantive rights; it simply provides a remedy for

---

[8] This is relevant in part because "an award of damages against an official in his personal capacity can be executed only against the official's personal assets, [but] a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.*

the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). Section 1983 suits may be brought against individuals in their official or individual capacity, as well as against a government entity. *Goodman*, 571 F.3d at 395 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)).

An individual-capacity suit seeks to impose liability on a "government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A plaintiff bringing an individual-capacity claim need only show that "the official, acting under color of state law, caused the [alleged] deprivation of a federal right." *Goodman*, 571 F.3d at 395 (5th Cir. 2009) (quoting *Graham*, 473 U.S. at 166 (1985)). As discussed *supra*, claims against defendant officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55).[9] Claims may thus be brought against municipal entities and are referred to as municipal liability or *Monell* claims. *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 307 (5th Cir. 2023). To succeed on a *Monell* claim, a plaintiff must prove that she was deprived of a federally protected right (1) pursuant to an official municipal policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the constitutional violation. *Id.*

---

[9] This is relevant in part because "an award of damages against an official in his personal capacity can be executed only against the official's personal assets, [but] a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* at 166.

b.  *Monell Liability*

Burney has brought her § 1983 claims against MPHSD, Perry, and Williams.  [doc. #26, pp. 10-11].  Defendants argue that MPHSD does not constitute a person as defined under § 1983 and, thus, cannot be held liable under that provision.  [doc. #8-1, p. 6].

As discussed *supra*, § 1983 claims can certainly be brought against municipal entities.  Consequently, Defendants' argument that a political subdivision such as MPHSD cannot be liable under § 1983 necessarily fails.

However, this does not mean that Burney has successfully stated a claim against MPHSD.[10]  As described *supra*, to successfully state a *Monell* claim, a plaintiff must prove that he was deprived of a federally protected right pursuant to an official municipal policy promulgated by a municipal policymaker.  An official policy may be shown through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority.  *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022).  For a practice to constitute a custom, it must have occurred for so long or so frequently that "the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice" of municipal employees.  *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)).  There is a "single incident exception" to the policy

---

[10] While Defendants did not explicitly invoke this argument, Burney has submitted briefing that is on point.  *See* [doc. #16, pp. 3-4] (arguing Burney sufficiently pleaded an official policy or custom for *Monell* liability to attach).  To the extent that the recommendation of dismissal could be considered *sua sponte*, Burney has a further opportunity to raise any objections to the district court.

or custom requirement, but the exception is "extremely narrow." *Valle v. City of Houston*, 613 F.3d 536, 542 (2010) (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

Concerning the policymaker prong, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). The Fifth Circuit distinguishes between final policymaking authority and final decision-making authority. *Id.* An individual is a final policymaker (and thus potentially liable under § 1983) if they are responsible for making law or setting policy in a given area of municipal business, *Sweetin*, 48 F.4th at 392, while a final decisionmaker can be liable under that law only if they possess "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton*, 541 F.3d at 549.

Here, Burney has not alleged that there was a written policy covering any of the alleged harassing or retaliatory acts. Apart from one instance involving Perry and William's involvement in Burney's termination, the allegedly harassing or retaliatory acts are not attributed to any specific individual. This lack of specificity means these allegations fail to cross the threshold from possibility to plausibility. It would, therefore, be improper to find that Burney has sufficiently alleged that these acts are part of a practice so common and well-settled as to constitute official policy.

Burney has also failed to allege that any of these acts are attributable to any individuals with final policymaking authority. One of the acts is attributed to the "Clinic Assistant Director," but there are no allegations to overcome the commonsense conclusion that this individual did not

possess final policymaking authority.  Furthermore, Burney does not plausibly attribute any of the acts to an entity with the requisite authority.  As the pleadings do not establish that the allegedly harassing or retaliatory acts were made by an individual or entity with final policymaking authority, they do not show that the acts were made pursuant to an official policy or custom. Burney has failed to plead that she was deprived of a federal right pursuant to a policy or custom. The First Amended Complaint likewise fails to include any new allegations that could save this claim, as Burney has not shown that any written policy exists covering the alleged acts, and she also does not plausibly attribute these acts to an individual or entity with final policymaking authority.  It would thus be inappropriate to find that Burney has sufficiently pleaded a § 1983 claim against MPHSD.

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of the § 1983 claims against MPHSD.

*c.  Fourteenth Amendment Equal Protection Claims*

Burney's second claim against Perry and Williams in their individual capacities is for violation of her Equal Protection rights under the Fourteenth Amendment.  [doc. #26, p. 11]. Specifically, Burney alleges these rights were violated when Perry and Williams took "adverse employment actions against her because she reported and opposed illegal conduct and participated in governmental investigations regarding [the] same."  *Id.*  Defendants argue that "there patently is an absence of [alleged] facts" sufficient to establish their liability.  [doc. #8-1, pp. 6-7].

The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This clause essentially requires that all persons similarly situated be treated alike.  *Glass*

*v. Paxton*, 900 F.3d 233, 244 (5th Cir. 2018).  A plaintiff pleading an equal protection claim must show that "similarly situated individuals were treated differently."  *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020).  In cases where the plaintiff is not a member of a suspect class, courts apply rational basis review.  *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.").  At the motion to dismiss stage, the reviewing court treats challenged differential treatment as valid "if [it] is able to hypothesize a legitimate purpose to support the action."  *Hines*, 982 F.3d at 273 (quotation omitted).  If the challenged action "does not appear to classify or distinguish between two or more relevant persons or groups, then the action – even if irrational – does not" run afoul of the Equal Protection Clause.  *Vera v. Tue*, 73 F.3d 605, 610 (5th Cir. 1996).

Here, Burney makes no allegations that she is a member of a suspect class.  She does not identify her race or that of any person allegedly involved, as a comparator or as an actor.  In most instances, the allegedly harassing and retaliatory conduct is alleged to have been applied in a manner that did not distinguish one group from another.  *See, e.g.*, [doc. #26, p. 8] ("Repeatedly ignoring her requests for personnel information about her pay and hours[.]").  Two instances raise the specter of differential treatment.  The first is Burney's allegation that she was denied pay for "hours worked at home," while "other employees [were permitted] to continue working from home when needed."  *Id.*  However, the mere fact that Burney was denied pay for working from home does not establish that she was treated differently from another group of employees; the pleading

standard requires more particularized and detailed allegations to be found plausible.[11]  Even if this alleged misconduct was predicated on differential treatment, legitimate purposes for the denial of pay are not hard to conjure.  For instance, perhaps the specific hours for which pay was denied had not been approved, the scope of work during those hours was outside what had been approved, or Burney did not properly report the hours.  Again, absent the particularized pleadings required by the pleading standard, it is impossible to eliminate these hypotheses.

The second instance of Burney attempting to plead differential treatment is her allegation that "several employees" who did not sign the Drug Policy consent form or failed to clock out were not terminated.  *Id.* at p. 9.  As with her allegations concerning the denial of pay, Burney's failure to support this allegation with particulars such as who these other employees are, their employment status, or how often they failed to clock out prevents these pleadings from crossing the line into legally sufficient plausibility.  If this were differential treatment, the undersigned can hypothesize legitimate purposes for her termination, such as a history of failing to clock out or repeated failure to comply with policies in general (for instance, failing to get work-from-home hours authorized or providing sufficient documentation to justify absences).  In her First Amended Complaint, Burney still has not pleaded or alleged any further details to show she was specifically treated differently from other employees or groups of employees, and she also does not mention that she is a member of a suspect class.  As Burney has failed to plead that she is a member of a suspect class or was subject to improper differential treatment, she has failed to state a Fourteenth Amendment Equal Protection claim.

---

[11] Burney fails to allege how many times it occurred, who communicated the denial, or any other relevant circumstances surrounding the alleged denial of payment.

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of Burney's Fourteenth Amendment claims.

## VI.    Section 1983 – First Amendment Retaliation Claims

One § 1983 claim against Perry and Williams in their individual capacities is for "Defendants' retaliation against [Burney, which] abridged, impaired, and interfered with [her]" First Amendment rights.  [doc. #26, p. 11].  Perry and Williams argue that "there patently is an absence of [alleged] facts" sufficient to establish their liability.  [doc. #8-1, pp. 6-7].

To state a claim for First Amendment retaliation, a plaintiff must show that (1) she was engaged in constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated against the plaintiff's continued exercise of constitutionally protected activity.  *Villarreal v. City of Laredo, Texas*, 94 F.4th 374, 397 (5th Cir. 2024).  The Fifth Circuit has clarified that a successful retaliation claim requires "some showing that *the* plaintiffs' exercise of free speech has been curtailed."  *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002).  This requires allegations that the plaintiff "reduced or changed his exercise of free speech."  *McLin v. Ard*, 866 F.3d 682, 697 (5th Cir. 2017).[12]

---

[12] The *Villarreal* court noted that this standard differs from that in other circuits, which do not require a plaintiff to make a showing that their own activity was altered by the alleged misconduct of defendants.  *Compare Villarreal*, 44 F.4th 363 with *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("The focus . . . is upon whether *a person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled.") *and Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.") However, the Fifth Circuit has declined to alter its standard to comport with the one used in other circuits.  *Villarreal*, 44 F.4th at 374 ("We are duty-bound to follow our circuit precedent.").

In its original Report and Recommendation, this Court found that Burney did not "allege that any of the harassing or retaliatory acts were conducted by Perry or Williams." [doc. #21, p. 16]. The Court also found the original Complaint devoid of allegations regarding the motivations behind any alleged suppression of Burney's constitutionally protected activity by Perry, Williams, or any other individuals. *See id.* at pp. 16-17. As a result, the Court recommended the dismissal of this claim. However, Burney subsequently filed a First Amended Complaint to address these deficiencies.

Upon review of the First Amended Complaint, the Court finds that Burney has now sufficiently addressed the issues identified in the prior Report and Recommendation. Burney asserts that her constitutionally protected activity included reporting and opposing unlawful conduct by Perry, Williams, and their agents, as well as disclosing such conduct to governmental authorities and participating in investigations. [doc. #26, p. 1]). Specifically, Burney "disclosed to various managerial employees of [MPHSD] that [Freeman-Ross] had been committing violations of law including without limitation Medicare/Medicaid fraud, medical records fraud, and theft of public funds." *Id.* at p. 6. These activities fall squarely within the scope of First Amendment protections, particularly when they pertain to exposing illegal conduct and fraud. Burney has sufficiently pled that she was engaged in constitutionally protected activity. Burney claims that, as a result of her protected activities, she was subjected to adverse actions, including harassment, unwarranted reprimands, and, ultimately, termination. The most significant of these adverse actions is her termination, which represents a serious injury that would undoubtedly deter a person of ordinary firmness from engaging in similar protected activities. Unlike the original Complaint, the First Amended Complaint provides greater specificity regarding Perry and Williams' roles in the alleged retaliatory conduct. Burney asserts that Perry and Williams "made

and participated in the decision to terminate Complainant's employment," and further alleges that Perry signed the certified letter informing her of the termination. [doc. #26, p. 3]. Consequently, Burney has adequately pleaded that the Defendants' actions meet the injury threshold necessary for a First Amendment retaliation claim.

Burney has also sufficiently pled in her First Amended Complaint that Perry and Williams took adverse actions that were substantially motivated against her continued exercise of constitutionally protected activity. According to the First Amended Complaint, Burney states that the Defendants' actions were "because Complainant reported, complained about, opposed, and refused to participate in unlawful conduct by Defendants and their agents and disclosed such conduct to governmental authorities and participated in investigations regarding same." [doc. #26, p. 1]. Burney specifically links her termination and other retaliatory actions to her reporting of illegal activities, asserting that both Perry and Williams were involved in the decision to terminate her employment. *Id.* at p. 3. This level of factual detail satisfies the pleading standard necessary for her claim to proceed.

In light of the factual allegations now presented, Burney has adequately alleged a viable First Amendment retaliation claim against Perry and Williams. Her amendments remedy the prior deficiencies by connecting the adverse actions to specific retaliatory motives and identifying the Defendants' direct involvement in the conduct at issue.

Accordingly, the claim against Perry and Williams meets the necessary pleading requirements, and it is RECOMMENDED that the motion be DENIED to the extent it seeks dismissal of Burney's First Amendment claims.

### VII.    False Claims Act and Louisiana Revised Statute § 46:439.1(E)

Burney's next claims arise under 31 U.S.C. §3730(h) and Louisiana Revised Statute § 46:439.1(E).  [doc. #26, pp. 11-12].  Defendants are allegedly liable under these provisions for retaliating when Burney "complained about, opposed, and refused to participate in unlawful conduct . . . and disclosed such conduct to governmental authorities."  *Id.*  Against this Defendants argue that claims under the federal provision – the False Claims Act, 31 U.S.C. § 3729 et seq ("the FCA") – require various procedural steps, including the filing of a *qui tam* action, with which Burney has not complied.  [doc. #8-1, pp. 8-9].

#### a.    False Claims Act

Burney specifically invokes § 3730(h) in her pleadings as the basis for her FCA claims. *See* [doc. #26, pp. 11-12].  This provision entitles employees who are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under [the FCA] or other efforts to stop [violations of that law]."  31 U.S.C. § 3730(h)(1).  FCA retaliation claims employ a burden-shifting framework whereby the employee-plaintiff must first establish a prima facie case by pleading (1) she engaged in protected activity; (2) the employer-defendant knew about the protected activity; and (3) the employer-defendant retaliated because of the protected activity.  *United States ex rel. Johnson v. Raytheon Co.*, 93 F.4th 776, 784 (5th Cir. 2024).[13]  If the employee-plaintiff establishes the prima facie case, the burden shifts to the employer-defendant to state a legitimate, non-retaliatory reason

---

[13] Protected activities include an employee reporting illegal conduct or fraud within the meaning of the FCA.  *Cf. U.S. ex rel. Patton v. Shaw Servs., LLC*, 418 F. App'x 366, 372 (5th Cir. 2011) ("Mere criticism of Shaw's construction methods, without any suggestion that Patton was attempting to expose illegality or fraud within the meaning of the FCA, does not rise to the level of protected activity.")

for its decision.  *Id.*  Should the employer-defendant articulate a legitimate reason, the burden shifts back to the employee-plaintiff to demonstrate that the employer-defendant's reason is merely a pretext for retaliation.  *Id.*

However, Burney has not filed a predicate FCA suit (i.e., a *qui tam* action), which forecloses her ability to seek relief under § 3730(h).[14]  Since Burney has not asserted that she has brought a *qui tam* action or assisted in bringing one, she cannot seek protection under this provision.  A *qui tam* action involves specific procedural requirements.  For instance, "the United States is given 60 days to review the claim and decide whether it will 'elect to intervene and proceed with the action.'"  *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 932 (2009) (citations omitted).  Additionally, the complaint must be filed under seal.  *See* 31 U.S.C. § 3730(b)(2).  Burney has not alleged that she initiated or followed these procedures for any *qui tam* action.

"The whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), encourages employees with knowledge of fraud to come forward by prohibiting retaliation against employees who assist in or bring *qui tam* actions against their employers."  *Shaw Services,* 418 F. App'x at 371 (quoting *Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 951 (5th Cir. 1994)).  To bring an FCA retaliation claim for her termination, Burney was required to show that she engaged in activity protected under this statute, that her employer knew she engaged in protected activity, and that she was discharged because of it.  *Id.*  However, the "protected activity" in § 3730(h) specifically refers to actions taken in connection with a *qui tam* lawsuit.  Since Burney has not claimed that she filed a *qui tam* suit or assisted in one, she has not engaged in the type of protected

---

[14] The FCA empowers private persons to bring civil actions for violations of 31 U.S.C. § 3729, but such an action must be brought in the name of the United States Government.  *Id.* at § 3730(b)(1). Burney has brought the instant action in her name, not that of the Government.

activity required under § 3730(h).  In short, although § 3730(h) protects employees from retaliation for reporting fraud, Burney's retaliation claim fails because she has not met the legal requirements for engaging in protected activity under this statute.

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of Burney's 31 U.S.C. §3730(h) claims.

### b. *Louisiana Revised Statute Section 46:439.1 Claims*

Burney also brings a claim under Louisiana Revised Statute § 46:439.1, which empowers individuals to bring *qui tam* actions for violations of §§ 46:438.2, 438.3, and 484.4.  LA. REV. STAT. § 46:439.1.  In her original Complaint, Burney did not specify which provision supported her claim, but she has amended her Complaint to clarify she is bringing a claim under Louisiana Revised Statute "§ 46:439.1**(E)**."  [doc. #26, p. 12] (emphasis added).  However, this amendment is futile.

Louisiana Revised Statute § 46:439.1(E) states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if the employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action in accordance with this Part or other efforts to stop one or more violations of this Part.

LA. REV. STAT. § 46:439.1(E).

This provision tracks § 3730(h)(1) in the FCA.  *Compare* LA. REV. STAT. § 46:439.1(E) *with* 31 U.S.C. § 3730(h)(1); *see also* [doc. #16, p. 5] ("La. R.S. 46:439.1 closely mirrors the FCA.").  Like the FCA, this Louisiana statute protects employees from retaliation for taking lawful actions to expose fraud or stop violations of the law.

The key requirement under § 46:439.1(E) is that the employee's protected actions must be "in furtherance of an action in accordance with this Part."  LA. REV. STAT. § 46:439.1(E).  This

language indicates that the protected activity must be connected to a *qui tam* action, which, like its federal counterpart, is intended to uncover fraud against government programs. The statute provides a pathway for individuals to act as private whistleblowers, filing lawsuits on behalf of the state to expose fraud.

However, Burney has not alleged that any *qui tam* action was brought before she filed this suit. The plain language of this statute makes clear that to invoke its whistleblower protections, the action must be tied to an ongoing or contemplated *qui tam* action. Without this connection, Burney's claim does not meet the statutory requirements for protection under § 46:439.1(E).

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of Burney's Louisiana Revised Statute § 46:439.1(E) claims.

    *c.   Section 23:967 Claims*

Burney has also brought a claim under Louisiana Revised Statute § 23:967. [doc. #26, p. 12]. Defendants argue that this claim fails as to Perry and Williams because they do not qualify as "employers." [doc. #8-1, p. 10].

This provision prohibits employers from "tak[ing] reprisal against an employee who in good faith, and after advising the employer of the violation of law," (1) discloses or threatens to disclose illegal workplace conduct; (2) participates in an investigation into illegal workplace conduct; or (3) refuses to participate in illegal workplace conduct. LA. REV. STAT. § 23:967(A). Under the statute, "employer" is defined as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." *Id.* at § 23:302(2). Perry and Williams are not employers as defined by this provision. Burney does not contest this. Therefore, Perry and Williams cannot be held liable under § 23:967. Defendants offer

no argument concerning MPHSD's liability under the law, so the § 23:967 claims against that entity remain untouched at this juncture.

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of Burney's claims under Louisiana Revised Statute § 23:967 as to Perry and Williams. It is RECOMMENDED that the motion be DENIED to the extent it seeks dismissal of Burney's claims under Louisiana Revised Statute § 23:967 as to MPHSD.

## VIII.   Section 1985 Claims

Burney's next claim arises from the Defendants' alleged conspiracy "to deprive [her] of equal protection under the law" in violation of 42 U.S.C. § 1985.  [doc. #26, p. 12].  Defendants counter that Burney has failed to allege a conspiracy motivated by racial or class-based animus and thus failed to state a claim under this provision.  [doc. #8-1, pp. 7-8].

The undersigned understands this claim to arise under § 1985(3), which provides, in part, a remedy to those injured when "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege that (1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement.  *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001).

As established *supra*, Burney has failed to allege that she was subject to racial or class-based discriminatory animus.   Furthermore, the First Amended Complaint contains only conclusory allegations concerning a putative conspiracy.  *See, e.g.*, [doc. #26, p. 12] ("Defendants conspired to deprive Complainant of equal protection under the law . . ."). There are no allegations

concerning when a conspiracy was made, who was involved, when the conspiracy was discussed, or any other details that could move the conclusory allegations into the realm of plausibility. Indeed, it is telling that Burney offers no arguments in support of her § 1985 claims in her opposition to the instant motion. *See generally* [doc. #16]. Burney has thus failed to state a claim under § 1985.

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of Burney's claims under 42 U.S.C. § 1985.

### IX.    Breach of Contract Claim

Burney's final claim is for breach of contract arising from the termination of her employment contract "without cause and without proper notice." [doc. #26, p. 12]. Defendants argue that this claim does not apply to Perry and Williams as they are not parties to the relevant contract. [doc. #8-1, p. 10].

To assess whether Perry and Williams are parties to the alleged employment contract, the pleadings must reflect the terms of said contract. However, Burney has not made allegations concerning any relevant terms, provisions, or other content of any contract,[15] nor has she attached the contract to her First Amended Complaint. Defendants, too, fail to provide a copy of the contract. It is thus impossible for this Court to assess whether Burney has plausibly alleged that Perry and Williams are implicated in this claim. It is also impossible to assess whether Burney has plausibly alleged that her employment contract was terminated without proper notice or cause. As

---

[15] Burney alleges that she "had an employment contract that carried over on a yearly basis," was "paid on a salary basis at first but was changed to hourly pay," and was responsible for providing "nursing care and medical condition management services" to patients while "under the supervision of a practicing physician." [doc. #26, p. 5]. These terms of employment do not establish relevant contractual provisions, such as whether Burney was an at-will employee or under what conditions she was subject to termination.

the plaintiff bears the burden of alleging facts to support her cause of action, Burney has failed to state a breach of contract claim.

Accordingly, it is RECOMMENDED that the motion be GRANTED to the extent it seeks dismissal of Burney's breach of contract claim.

## X.    Supplemental Jurisdiction

In light of the above analysis, only Burney's claims under the First Amendment and Louisiana Revised Statute § 23:967 remain.  Defendants argued for dismissal of all claims except for the whistleblower claim, and, thus, contended that the Court should decline to exercise supplemental jurisdiction over the one remaining state law claim and thus dismiss it.  [doc. #8-1, p. 10].

Burney has pleaded that this Court has jurisdiction over the instant action via federal question jurisdiction, 28 U.S.C. § 1331, as to the federal claims and supplemental jurisdiction, *id.* at § 1367, as to the state law claims.  [doc. #26, p. 5].  The undersigned having now found that both a federal and state law claim remain in dispute, jurisdiction is maintained under §§ 1331 and 1367.[16]  It is thus appropriate to exercise supplemental jurisdiction over the remaining state law claims.

Accordingly, it is RECOMMENDED that the motion be DENIED to the extent it requests this Court to decline to exercise supplemental jurisdiction over remaining state law claims.

## Conclusion

For the foregoing reasons,

---

[16] Burney is a resident of Louisiana, and MPHSD is a political subdivision of Louisiana. Therefore, diversity jurisdiction under 28 U.S.C. § 1332 is unavailable.

IT IS RECOMMENDED that the motion be GRANTED IN PART and DENIED IN PART.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for an extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 16th day of October, 2024.

KAYLA FAYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE